

**Signed and Filed: November 28, 2022**

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ) Bankruptcy Case No. 22-30028-DM |
| E. LYNN SCHOENMANN, | ) Chapter 11 |
| Debtor. | ) |
| | ) Adversary Case No. 22-3019 |
| STUART GORDON SCHOENMANN INDIVIDUALLY AND AS EXECUTOR OF THE ESTATE OF DONN R. SCHOENMANN; CELESTE LYTLE; BETH SCHOENMANN; COLETTE SIMS, | ) |
| Plaintiffs, | ) |
| v. | ) |
| E. LYNN SCHOENMANN, | ) |
| Defendant. | ) |

**MEMORANDUM DECISION DENYING MOTION FOR SUMMARY JUDGMENT**

I. <u>Introduction</u>

On November 3, 2022, the court held a hearing on Plaintiffs Stuart Gordon Schoenmann (individually and as executor of the estate of Donn R. Schoenmann), Celeste Lytle, Beth Schoenmann,

-1-

and Colette Sims' ("Plaintiffs") Motion for Partial Summary Judgment ("MSJ") (Dkt. 25). Though the MSJ is styled as a motion for partial summary judgment, it seeks summary judgment as to all claims of nondischargeability asserted against Defendant E. Lynn Schoenmann (Defendant) under 11 U.S.C. §§ 523(a)(2)(A), (a)(4), and (a)(6). The MSJ is based mainly on the application of issue preclusion to the findings within the Marin County Superior Court's Tentative Decision ("Tentative Decision") which nullified a post marital agreement ("PMA") between Defendant and her late husband, Donn. The court denied summary judgment as to 11 U.S.C. § 523(a)(6), because no part of the MSJ established that Defendant's actions were either willful or malicious, and took remainder of the MSJ under submission.

For the reasons stated below, the court will DENY summary judgment as to the rest of the MSJ.

II. Standard for Summary Judgment

On a motion for summary judgment, the court must determine whether, viewing the evidence in the light most favorable to the nonmoving party, there are any genuine issues of material fact as to any claim, part of claim, defense, or part of defense. *Simo v. Union of Needletrades, Indus. & Textile Employees,* 322 F.3d 602, 609-10 (9th Cir. 2003); Fed. R. Civ. P. 56. Summary judgment against a party is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

III. Standard for Issue Preclusion

Summary judgment is appropriate if all elements of a claim were previously adjudicated under the doctrine of issue preclusion. "Principles of collateral estoppel apply to proceedings seeking exceptions from discharge brought under 11 U.S.C. § 523(a)." *In re Harmon*, 250 F.3d 1240, 1245 (9th Cir. 2001). Bankruptcy courts determine the preclusive effect of a state court judgment by the preclusion law of the state court. *Id*. In California, the doctrine may be applied, and summary judgment granted if (1) the issue is identical to what was decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the issue was necessarily decided in the prior proceeding; (4) the decision in the prior proceeding is final and on the merits; and (5) the party against whom preclusion is sought is identical to or in privity with the party to the prior proceeding. *See Lucido v. Superior Court*, 51 Cal.3d 335, 341 (Cal. 1990). Even if these elements are met, courts also determine whether the "application of preclusion furthers the public policies underlying the doctrine." *In re Harmon*, 250 F.3d at 1245.

"The 'identical issue' requirement addresses whether 'identical factual allegations' are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same." *Lucido v. Superior Court*, 51 Cal.3d at 341. For a matter to be considered "necessarily decided," "courts have previously required only that the issue not have been 'entirely unnecessary' to the judgment in the initial proceeding." *Id.* (citations omitted).

-3-

In this matter, there is no argument that the parties involved in the Superior Court matter and this case are identical, that the issues there were actually litigated, and that the Tentative Decision is final for purposes of this MSJ. The first and third elements of *Lucido*, whether the issues are identical and were necessarily decided, must be considered here. There is no public policy component that calls into question the application of preclusion principles.

IV. <u>The Superior Court's Tentative Decision</u>

Due to an agreed-upon bifurcation of claims, the Tentative Decision determined only that the PMA was invalid. In California, "[i]f it is determined that [the PMA] *unfairly* benefits one spouse over the other, the agreement will be presumed to be the result of undue influence and the agreement will be set aside unless the advantaged spouse is able to prove by a preponderance of the evidence that the agreement was not obtained through undue influence." Tentative Decision at p. 12 (citations omitted).

The Tentative Decision determined that the PMA unfairly advantaged Defendant over Donn and further concluded that Donn's assent to the PMA was a result of undue influence. Analyzing the elements of undue influence, the Tentative Decision found that Donn's decision to sign the PMA was not freely and voluntarily made, Donn did not have knowledge of all the facts surrounding the PMA, but that Donn *did* have a complete understanding of the effect of the PMA. To support its determination regarding Donn's lack of knowledge, the Tentative Decision found that when the PMA was signed, Donn could not have

-4-

known the true value of all assets, though he did understand that those assets would ultimately go to the Defendant as a result of the PMA.

Plaintiffs rely on the above determinations and the underlying findings regarding the concealment or misrepresentation of the value of real property and retirement account to support an argument for summary judgment on both claims of nondischargeability discussed below.

V.  11 U.S.C. § 523(a)(2)(A)

A successful claim pursuant to 11 U.S.C. § 523(a)(2)(A) ("subsection (a)(2)(A)") requires a showing of five elements: "(1) misrepresentation, fraudulent omission, or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of [the debtor's] statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by his reliance on the debtor's statement or conduct." *Turtle Rock Meadows Homeowners Ass'n v. Slyman* (*In re Slyman*), 234 F.3d 1081, 1085 (9th Cir. 2000) (citations omitted). Plaintiffs argue that Defendant, knowingly and with an intent to deceive, misrepresented the amount of money in her retirement account and the value of the Mill Valley property, that Donn relied on those misrepresentations to sign the PMA, and the PMA's unfair advantage to Defendant harmed Donn.

As to the first and third elements of nondischargeability under subsection (a)(2)(A), Plaintiffs argue these are satisfied by the Tentative Decision's finding that Defendant

"affirmatively and intentionally misrepresented the values of both the Mill Valley property as well as her retirement account." This court is not convinced that the Superior Court's conclusions regarding the retirement account are entirely consistent with the court's own recitation of facts. However, consistent with *Lucido*, it accepts this finding was necessarily decided by the Superior Court, and that the finding was not entirely unnecessary to the Superior Court's conclusion that the PMA was invalid. Accordingly, this court agrees that it is bound by the Superior Court's findings as to the first and third elements of subsection (a)(2)(A).

Next, Plaintiffs argue that the Superior Court also necessarily determined the second element, Defendant's knowledge of the falsity of her statements, because the PMA was a document relating to marital assets and Donn was essentially excused from investigating the valuations provided by Defendant, and as noted above, the court further found the Defendant affirmatively misrepresented the value of her retirement account and the Mill Valley property. The court questions whether an excuse from investigation on Donn's part is necessarily a decision regarding Defendant's knowledge. Nonetheless, as it appears that the Superior Court decided that Defendant was unable to prove Donn had full knowledge of all facts when signing the PMA was in part because she affirmatively made misrepresentations, it must accept that she knew those misrepresentations were untrue as an actually litigated and necessarily determined fact.

As to the fourth element, no part of the Tentative Decision relates to Donn's justifiable reliance. Instead, the Plaintiffs

-6-

assert that Donn's signing of the PMA shows that he relied on Defendant's misrepresentations. This assertion is contradicted by the Tentative Decision which found that Donn did have a complete understanding of the effect of the PMA, and that he signed the PMA because he wished to live out his days in the family home and he saw the PMA as the only means to fulfill that wish. There are no facts within the Tentative Decision that can lead this court to find that the element of justifiable reliance has been established for the purpose of issue preclusion, and, of course, for a determination of nondischargeability.

Regarding the element of damages, the Superior Court quantified Lynn's understatement of the value of the marital assets in the PMA "by more than $1.0 million" (See Tentative Decision, at 25:1-2). In doing so, it referred specifically to the misrepresentations of the valuation of the retirement account and the value of the Mill Valley property in the PMA in November, 2016. This court must and does accept that in doing so, that court had a basis to impose liability in at least that amount pursuant to the findings used to invalidate the PMA.

Nevertheless, given the lack of facts in the Tentative Decision that could establish the element of justifiable reliance, and the absence of proof of any nondischargeable damages (discussed, *infra*), the court must deny summary judgment as to subsection (a)(2)(A).

VI.  <u>11 U.S.C. § 523(a)(4)</u>

No debts that are obtained by "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" may

-7-

discharged. 11 U.S.C. § 523(a)(4) ("subsection (a)(4)"). There are no allegations of embezzlement or larceny.

Fraud by a fiduciary is still fraud. If Plaintiffs believe Defendant's debts to them are nondischargeable because of subsection (a)(4) fraud, they have not satisfied the relevant element of reliance (as discussed in subsection (a)(2)(A), *supra*).

Defalcation by a fiduciary requires a showing that (1) the debtor occupied a fiduciary relationship in relation to the creditor; and (2) the debtor misappropriated funds or otherwise breached a fiduciary duty in an act of bad faith, moral turpitude, or an act by the debtor that was either intentionally wrongful or the "reckless conduct of the kind that the criminal law often treats as the equivalent." *Bullock v. BankChampaign, N.A.* 569 U.S. 267, 274 (2013).

As to the first element, there is no dispute that Defendant, as Donn's spouse, had a fiduciary relationship with Donn.

As to the second element, Plaintiffs assert that through the invalidated PMA Defendant has wrongfully taken an unspecified amount of Donn's separate and community property. Plaintiffs assert a litany of acts allegedly undertaken by Defendant to obtain the PMA as well as post-petition acts that allegedly illustrate Defendant's misappropriation of Donn's assets.

Whatever Defendant may or may not have done after filing bankruptcy is wholly unrelated to this proceeding for nondischargeability of pre-bankruptcy debts.

Case: 22-03019    Doc# 48    Filed: 11/28/22    Entered: 11/28/22 14:37:59    Page 8 of 11

Any acts not conclusively established by the Tentative Decision, material or not, are heavily and hotly contested and not appropriate for evaluation at the summary judgment stage. In any event, the conduct of Defendant that led the Superior Court to find abuse and other acts to invalidate the PMA are not <u>identical</u> to the type of conduct the Supreme Court now requires, as noted above, to impose nondischargeable consequences on a fiduciary for defalcation under subsection (a)(4). The court did not analyze Defendant's apparent defalcation or fraud by a fiduciary under the lens now required by *Bullock.*

Far beyond the Tentative Decision's findings regarding Defendant's retirement funds or the value of the Mill Valley property, Plaintiffs' contention is that Defendant received community assets and has either not returned them to the probate estate or disposed of them in the manner of a fiduciary. This extends far beyond the scope of the Tentative Decision's findings that are binding on this court. Any assertion that community property not having been turned over is a result of defalcation is to ignore the procedural posture of this dispute; the community property held by Defendant as a result of the invalidated PMA is also property of Defendant's bankruptcy estate, and need not be turned over until this court so determines.

Additionally, while the Tentative Decision finds that Defendant's misrepresentations regarding the value of her retirement account were intentional, the Tentative Decision does not discuss Defendant's state of mind when she actually transferred that money in May, 2016. The understatement of

-9-

value of Mill Valley was a statement regarding the house's value in its current state in August 2016. Because the Superior Court did not analyze when these events occurred but instead focused on when they were misrepresented, this court cannot conclude that it necessarily decided the same issue it must in order to impose nondischargeability for her actions by way of issue preclusion. For that reason alone, the MSJ must be denied.

In either case, Plaintiffs have not shown that the Tentative Decision imposed any damages at all for either the transfer of the $480,000 from Defendant's retirement account in May, 2016 (as distinguished from the nondisclosure of that transfer at the time of the PMA) or the misrepresentation of the value of the Mill Vally property (as distinguished from the subsequent misrepresentation of that value at the time of the PMA) to show nondischargeable damages. Nothing in the Tentative Decision establishes nondischargeable damages for this conduct, and that is an additional reason to deny the MSJ.

VII. Conclusion

For the reasons stated at the hearing and in this Memorandum Decision, the MSJ is denied. The court is issuing an Order concurrently with this Memorandum Decision that is consistent with its conclusions.

**END OF MEMORANDUM DECISION**

COURT SERVICE LIST

ECF Recipients